UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ENRIQUE BARRIOS, INDIVIDUALLY,
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,

          Plaintiff,

v.

EMMANUEL PACQUIAO; TOP RANK,
INC.; MICHAEL KONCZ; ROBERT ARUM;
TODD DUBEOF; FLOYD MAYWEATHER, JR.;
MAYWEATHER PROMOTIONS, LLC;
DOES 1–10 and ABC CORPS 1–10,

          Defendants.
_____/

CASE NO.:

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

Plaintiff Enrique Barrios ("Plaintiff"), pursuant to Fed.R.Civ.P. 23, by and through his undersigned attorneys, brings this action, on behalf of himself and a Nationwide Class and New York Subclass, of all other similarly situated persons, against Defendants, Emmanuel Pacquiao, Top Rank, Inc., Michael Koncz, Robert Arum, Todd Duboef, Floyd Mayweather, Mayweather Promotions, LLC, John Does 1–10 and ABC Corps 1–10. (collectively "Defendants"), and, except for information based on his own personal knowledge, alleges on information and belief based on the investigation conducted by his counsel, and facts that are a matter of public record, as follows:

### NATURE OF THE ACTION

1.    This is a class action lawsuit brought on behalf of consumers who purchased the Manny Pacquiao vs. Floyd Mayweather, Jr. fight on May 2, 2015 ("The Fight") through pay-per-view television in the United States and its territories.

1

2. Plaintiff, brings this action individually and on behalf of a proposed class and subclass ("Class" or "Classes"), as more fully defined below, of similarly situated consumers, nationwide and in New York, seeking redress for the Defendants' fraudulent, false, deceptive, and misleading advertising and promotion of The Fight. Defendants knew that Manny Pacquiao has a severe right shoulder injury and was thus physically compromised prior to The Fight and fraudulently concealed that information from consumers, including Plaintiff and the Class members. Defendants also engaged in deceptive, misleading and unlawful conduct in marketing, advertising, promoting, and selling The Fight via pay-per-view by making claims and representations (and omissions) that led consumers to believe that Mayweather and Pacquiao were both healthy and physically uncompromised before The Fight, such that the event would be "The Fight of the Century."

3. Plaintiffs and Class members were led to anticipate and were expecting a vigorous, competitive and captivating fight between two highly skilled, world-class professional boxers touted by the Defendants to be capable of performing at their peak abilities. As a result of Pacquiao's fraudulently concealed injury, however, Pacquiao did not perform at his peak ability during The Fight, throwing and landing far fewer punches than normal, thereby making the fight less interesting, less close, and less entertaining than it should have been if he were healthy, and Plaintiff and Class members did not receive the product they expected and paid for.

4. As a result of the Defendants' intentional fraudulent concealment of material information and deceptive, misleading, and unlawful conduct in marketing, advertising, promoting, and selling The Fight, Plaintiff and the Class members were induced into purchasing a product (*i.e.*, The Fight, via pay-per-view) that they otherwise would not have purchased had they known the truth about Pacquiao's physical condition in advance of The Fight, and thus were each

2

injured in the amount of the cost of the fight via pay-per-view television, approximately $89.95 (standard definition) or $99.95 (high definition).

## JURISDICTION, PARTIES AND VENUE

5. Original jurisdiction of this Court exists by virtue of 28 U.S.C. § 1332(d)(2) and the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1711, *et. seq.* The Plaintiff and the Defendants in this action are citizens of different states and the amount in controversy in this action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

6. For the subclasses, the Court has original jurisdiction under CAFA and/or supplemental jurisdiction under 28 U.S.C. § 1367.

7. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in the Eastern District of New York, the Defendants and/or their agents are doing business in New York, and/or Defendants are otherwise subject to personal jurisdiction in this judicial district.

## PLAINTIFF

8. For purposes of clarity, the Plaintiff is asserting claims on behalf of all people in the United States and its territories who purchased The Fight via pay-per-view, and who do not appear herein as named Plaintiffs.

9. Plaintiff Enrique Barrios is a resident of Brooklyn, Kings County, New York. Mr. Barrios purchased The Fight via pay-per-view through his cable provider.

## DEFENDANTS

10. Defendant Emmanuel Pacquiao is a professional boxer who fought Floyd Mayweather Jr. in The Fight which is the subject of this litigation. It is believed that Pacquiao resides in the Philippines.

11. Top Rank, Inc. ("Top Rank") is a Nevada corporation engaged in the business of producing, promoting, and selling tickets to fighting events. Its principal place of business is located in Clark County, Nevada.

12. Defendant Michael Koncz is an advisor of Defendant Pacquiao and was responsible for actions and decisions that led to the failure of the Defendants to disclose Pacquiao's shoulder injury before The Fight. It is believed that Defendant Koncz resides in the Philipines.

13. Defendant Robert Arum is the Treasurer and Director of Top Rank and was responsible for actions and decisions that led to the failure of the Defendants to disclose Pacquiao's shoulder injury before The Fight. Defendant Arum is a resident of Clark County, NV.

14. Defendant Todd Deboef is the President of Top Rank and was responsible for actions and decisions that led to the failure of the Defendants to disclose Pacquiao's shoulder injury before The Fight. Defendant Deboef is a resident of Clark County, NV.

15. Defendant Floyd Mayweather is a professional boxer, and fought against Defendant Pacquiao in The Fight. Defendant Mayweather is also the manager of Defendant Mayweather Promotions, LLC. Upon information and belief, Mayweather knew of Pacquiao's severe shoulder injury before The Fight but failed to disclose it to the general public, and rather, continued to promote the Fight. Mayweather is a resident of Clark County, NV.

16. Mayweather Promotions, LLC is a boxing promotion company engaged in the business of producing, promoting, and selling tickets to fighting events. Mayweather Promotions, LLC is registered in the State of Nevada, and its principal place of business is in Clark County, Nevada.

17. Defendants Does 1–10 and ABC Corporations 1–10 are fictitious names for various entities or persons whose true identity are unknown to the Plaintiff at this time that were

responsible for actions and decisions that led to the failure of the Defendants to disclose Pacquiao's shoulder injury before The Fight. Once the true identities of said defendants are known, Plaintiff will seek leave of the Court to amend its Complaint to name said defendants.

## **GENERAL ALLEGATIONS**

18. On May 2, 2015, Manny Pacquiao and Floyd "Money" Mayweather fought in a boxing match billed by many to be "The Fight of the Century." Mayweather entered The Fight with a record of 48-0-0 as the world welterweight champion in the WBC, WBA, WBO and Ring Magazine, and the super welterweight title-holder in the WBC and WBA. Pacquiao entered The Fight with a record of 57-5-2, and has held numerous championship belts in the past.

19. The Fight was held at the MGM Grand Hotel & Casino in Las Vegas, NV before a sold-out crowd of 16,507.

20. The Fight was heavily promoted for months in advance by the Defendants. The purse of the fight was estimated to be approximately $300 million, with Mayweather taking sixty percent (approximately $180 million) and Pacquiao taking 40% (approximately $120 million).

21. The Fight was the most expensive in boxing history for fans to watch either live or on pay-per-view television. Tickets to The Fight ranged from $1,500 to over $40,000 for ringside seats, and the price to purchase The Fight on pay-per-view television was approximately $89.95 for standard definition and $99.95 for high definition. The majority of the purse for Pacquiao and Mayweather was comprised of revenue from the several million American households who purchased the fight on pay-per-view television.

22. The Nevada State Athletic Commission ("NSAC") requires boxers to fill out, sign and submit a Pre-Fight Medical Questionnaire—under oath and by penalty of perjury— before fighting in any boxing matches.

23. Pacquiao filled out a Pre-Fight Medical Questionnaire for the NSAC in the week leading up to The Fight, or had an agent of his fill out this form on his behalf.

24. One of the questions on the Pre-Fight Medical Questionnaire asked whether the fighter "had any injuries to [his] shoulders, elbows or hands that needed evaluation or examination…" Pacquiao, or an agent answering on his behalf, answered "no" to this question. Pacquiao signed this form, as did Michael Koncz, one of Pacquiao's advisors.

25. However, Pacquiao had a shoulder injury, which upon information and belief was a torn rotator cuff in his right shoulder, that he was aware of when he signed and submitted the Pre-Fight Medical Questionnaire to the NSAC.

26. Not only was Pacquiao's severe shoulder injury withheld from the NSAC, but it was withheld from the general public, which was deliberately misled to believe that Mayweather and Pacquiao were both healthy and physically uncompromised before "The Fight of the Century."

27. Pacquiao is known for his aggressive style of fighting and all-out attack, which was compromised by his shoulder injury.

28. Approximately two hours before the fight, Pacquiao's camp informed the NSAC that Pacquiao had a shoulder injury and requested that he be permitted to receive an anti-inflammatory shot before the fight.

29. The NSAC denied Pacquiao's request to receive an anti-inflammatory shot before the fight because he failed to timely disclose his shoulder injury on the Pre-Fight Medical Questionnaire he submitted.

30. Francisco Aguilar, chairman of the NSAC said that had Pacquiao disclosed his shoulder injury to the NSAC in his Pre-Fight Medical Questionnaire, the NSAC doctor would have monitored Pacquiao leading up to the fight and allowed him to receive the pre-fight anti-

6

inflammatory shot.

31. Pacquiao lost the Fight to Mayweather in a twelve round unanimous decision. There were no knockdowns in the Fight.

32. Pacquiao threw just 429 punches in the fight, landing only 81. That's approximately half the number of punches he typically throws.

33. Pacquiao only landed 19% of his punches, as opposed to Mayweather who landed 34 % of his punches. Mayweather landed 148 punches, and landed 81 power punches, equal to the total number of punches Pacquiao landed.

34. Leading up to the fight, Pacquiao and his team spoke of their plans of volume punching and continuous aggression. There was even talk of Pacquiao aiming for hundred punch rounds.

35. However, as a result of his severe shoulder injury, Pacquiao was unable to throw or land a high volume of punches, making the fight less interesting, less close, and less entertaining than it should have been if Pacquiao were healthy.

36. Days after the fight, it was disclosed that Pacquiao's shoulder injury was in fact a torn right rotator cuff injury.

37. Dr. Neal ElAttrache, the orthopedic surgeon who will be operating on Pacquiao's shoulder described the injury as a "significant tear."

38. Pacquiao will undergo an operation to fix his torn rotator cuff soon, and is expected to have a nine to twelve month recovery period.

39. After the fight, Defendant and Top Rank promoter Bob Arum said Pacquiao suffered a shoulder injury in training camp about two-and-a-half weeks earlier and that it hampered him in the fight.

7

40. At a post-fight news conference, Pacquiao said, "I don't want to make alibis or complain or anything [but] it's hard to fight one-handed." Dan Rafael, *Manny Pacquiao Needs Surgery to Fix 'Significant Tear" in Right Shoulder*, May 5, 2015, *available at*: http://espn.go.com/boxing/story/_/id/12821905/manny-pacquiao-surgery-significant-tear-rotator-cuff-right-shoulder.

41. According to Dashon Johnson, one of Pacquiao's sparring partners, the injury occurred a "few weeks" before Saturday's fight and was so significant that the sparring partners were sent home because Pacquiao couldn't fight with the injury. Johnson said he was instructed to keep it a secret. Cork Gaines, *Manny Pacquiao's Hidden Shoulder Injury is Turning into a Complete Debacle*, May 5, 2015, Business Insider, *available at:* http://www.businessinsider.com/manny-pacquiao-floyd-mayweather-shoulder-injury-2015-5.

42. Upon information and belief Mayweather's camp was also aware of Pacquiao's shoulder injury weeks before the fight.

43. Defendant Leonard Ellerbee, CEO of Mayweather Promotions stated in an interview before the fight with Yahoo's Kevin Iole, "Freddie Roach thinks he runs a tight camp, but I know everything that's happening there…"

44. Indeed, Mayweather's camp was so aware of details from Pacquiao's camp that they even knew the days when he changed his morning running routine.

## CLASS ACTION ALLEGATIONS

45. Plaintiff brings this suit as a class action on behalf of himself and on behalf of a Nationwide Class and New York Subclass of other similarly situated persons pursuant to Fed.R.Civ.P.23(a), 23(b)(2), and/or 23(b)(3). Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Classes may be expanded or

8

narrowed. The proposed Classes are defined as follows:

> **Nationwide Class**: All persons who purchased the May 2, 2015 Pacquiao-Mayweather fight via pay-per-view within the applicable statutory limitations period, including the period following the filing of this action.
>
> **New York Subclass**: All residents of the State of New York who purchased the May 2, 2015 Pacquiao-Mayweather fight via pay-per-view within the applicable statutory limitations period, including the period following the filing of this action.

46. Excluded from the Classes are: (1) Defendants, Defendants' subsidiaries, affiliates, officers, directors, assigns and successors, and any entity in which Defendants have a controlling interest; (2) the Judge to whom this case is assigned and any member of the Judge's immediate family; and (3) anyone asserting claims for personal injury. Plaintiff reserves the right to modify the Class and Subclass definitions as further investigation and/or discovery so warrant.

47. This action has been brought and may properly be maintained as a class action pursuant to Fed.R.Civ.P. 23 and case law thereunder.

48. **Numerosity:** The members of the Classes are so numerous that joinder of all members is impracticable. Plaintiff reasonably believes that the Classes are comprised of hundreds of thousands, if not millions, of consumers throughout the United States and its territories and New York.

49. **Commonality:** Common questions of law and fact exist as to all members of the Classes. These common questions predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

> (a) Whether Defendants' promotion, marketing, and advertising of the May 2, 2015 fight was fraudulent;

(b)     Whether Defendants fraudulently concealed from consumers, the public, and Class Members information pertaining May 2, 2015 fight;

(c)     Whether Defendants' conduct as alleged herein constitutes common law fraud;

(d)     Whether Defendants' promotion, marketing, and advertising of the May 2, 2015 fight was deceptive or misleading;

(e)     Whether Defendants' conduct as alleged herein violates the New York Deceptive Acts and Practices Acts and/or States' unfair trade practices acts;

(f)     Whether Defendants' conduct as alleged herein constitutes unjust enrichment; and

(g)     Whether Plaintiff and Class Members have sustained monetary loss and the proper measure of that loss.

(h)     These and other questions of law or fact which are common to the members of the Classes and predominate over any questions affecting only individual members of the Class.

50.     **Typicality:** Plaintiff's claims are typical of the claims of the members of the Classes, as all Class members are similarly affected by Defendants' wrongful conduct. Plaintiff, like other members of the Classes, purchased the Pacquiao-Mayweather fight via pay-per-view after exposure to the same material misrepresentations and/or omissions appearing in Defendants' marketing, advertising, and promotion of the fight, and received a product that was not as represented. Plaintiff is advancing the same claims and legal theories on behalf of himself and all absent members of the Classes.

51.     **Adequacy:** Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other

members of the proposed Class and is subject to no unique defenses.

52. Plaintiff is similarly situated in interest to all members of the proposed Class and is committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions. Accordingly, Plaintiff is an adequate representative of the proposed Class and will fairly and adequately protect the interests of the Class.

53. This suit may be maintained as a class action under Fed.R.Civ.P. 23 (b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. The injury suffered by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents no management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

### COUNT I - Fraud
**(Asserted on Behalf of the Nationwide Class and the New York Subclass)**

54. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1–53 above as if fully set forth herein.

55. Defendants, prior to and at the time the Plaintiff and the Class members decided to

purchase pay-per-view access to The Fight knew and were fully apprised of the fact that Pacquiao was suffering from a severe shoulder injury and that said shoulder injury would physically and materially affect and compromise his ability to box during The Fight, including, but not limited to compromising his typical aggressive style of fighting and all-out attack.

56. Pacquiao's injury compromised the integrity of the fight, and full disclosure of Pacquiao's injury to the public would have allowed consumers to be fully informed on whether they wanted to purchase The Fight on pay-per-view television for approximately $89.95 (standard definition) or $99.95 (high definition) under the circumstances.

57. None of the Defendants informed or apprised the public or consumers, including Plaintiff and Class members, nor the Nevada Athletic Commission, about Pacquiao's injury in advance of the Fight.

58. At all relevant times herein, Defendants had a duty to disclose Pacquiao's injury and intentionally concealed and/or failed to disclose the injury to the Plaintiff and the Class Members.

59. Plaintiff and the Class members relied on the Defendants to disclose information pertaining to The Fight, including the physical well-being of the boxers, and the Plaintiff and the Class members were unaware of Pacquiao's injury at the time they made their pay-per-view purchases.

60. As a direct and proximate cause of the Defendants' fraudulent conduct, Plaintiff and the Class members suffered ascertainable losses, including, but not limited to, the purchase price of the pay-per-view showings they purchased.

### COUNT II - Violations of New York Deceptive Acts and Practices Act
**(Asserted on Behalf of the Nationwide Class and the New York Subclass)**

61. Plaintiff re-alleges and incorporates by reference the allegations contained in

paragraphs 1–60 above as if fully set forth herein.

62. This is a claim for relief under the New York Deceptive Acts and ConPractices Act, N.Y. Gen. Bus. Law §§ 349 and 350. Under the General Business Laws, section 349 states that "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful." GBL § 349. Furthermore, Section 350 reads that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful." GBL § 350.

63. Through their deceptive acts and practices (including omissions), Defendants have harmed the public at large, including Plaintiff and members of the New York Subclass, and such deceptive acts and practices were conducted through trade or commerce.

64. Defendants' deceptive acts and practices, as alleged herein, are and were consumer oriented in that the Defendants are in the business of distributing, marketing, promoting, competing in and selling boxing matches to consumers, including Plaintiff and members of the New York Subclass.

65. The Defendants' deceptive acts and practices (or omissions) as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Subclass regarding Defendants' products.

66. As alleged herein, Defendants engaged in deceptive or materially misleading acts or practices by, but not limited to, 1) marketing and advertising and promoting that Mayweather and Pacquiao were both healthy and physically uncompromised before The Fight, such that the event would be "The Fight of the Century"; and 2) concealing from consumers, including Plaintiff and members of the Subclass, that Pacquiao was physically compromised by a severe shoulder

injury.

67. The Defendant's acts and omissions as well as their failure to use reasonable care in this matter as alleged in this Complaint, including but not limited to, the knowing misrepresentation or failure to disclose the true nature circumstances concerning also Pacquiao's physical condition constitute violation of the provisions of the New York Deceptive Acts and Practices Act.

68. Thus, Defendants' advertising, marketing, and promotion of the Fight was false, misleading, and deceptive pursuant to GBL §§ 349 and 350.

69. The Defendants' false and deceptive acts and practices set forth herein are and were likely and reasonably foreseeable to mislead Plaintiff and members of the Class and Subclass acting reasonably in their reliance on Defendants' acts and practices, and to their detriment.

70. Plaintiff and members of the Class and Subclass, acting reasonably, did rely on the Defendants' acts and practices in deciding to purchase the Pacquiao-Mayweather fight via pay-per-view.

71. Plaintiff and New York Subclass members have suffered actual damages as a result of Defendants' violations of GBL §§ 349 and 350 and are entitled to relief including, but not limited to, actual damages, costs and attorneys' fees pursuant to New York law.

### COUNT III -Violation of Other Consumer Protection Acts
**(Asserted on Behalf of Plaintiff and the National Class)**

72. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1–71 above as if fully set forth herein.

73. The vast majority of states and the District of Columbia have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising and that allow consumers to bring private and/or class

actions. By making false and deceptive claims as to Pacquiao's physical condition before The Fight, and by fraudulently, deceptively, and misleadingly failing to disclose that Pacquiao was physically compromised by a severe shoulder injury, Defendants have engaged in unfair competition or unlawful, unfair, misleading, fraudulent, unconscionable, or deceptive acts in violation of the state consumer statutes listed, but not limited to the below:

a. Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-1, *et seq.;*

b. Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*

c. Arkansas Deceptive Trade Practices Act, Ark. Code §4-88-101, *et seq.;*

d. California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*

e. Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.;*

f. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42- 110a, *et seq.;*

g. Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*

h. District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28 3901, *et seq.;*

i. Florida Deceptive and Unfair Trade Practices, Act *Florida Statutes* § 501.201, *et seq.*;

j. Georgia Fair Business Practices Act, §10-1-390 *et seq.;*

k. Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, et. seq., and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes §481A-1, *et seq.;*

l. Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

m. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

n. Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

15

    o.    Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

    p.    Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. §§ 51:1401, *et seq.;*

    q.    Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq.,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

    r.    Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

    s.    Michigan Consumer Protection Act, §§ 445.901, *et seq.;*

    t.    Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

    u.    Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

    v.    Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

    w.    Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

    x.    Nebraska Consumer Protection Act, Neb. Rev. Stat. §59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. §87-301, *et seq.;*

    y.    Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0915 to 598.0925, inclusive, *et seq.*; Nev. Rev. Stat. 598A et seq.*;* Nev. Rev. Stat. 41.600 *et seq.*;

    z.    New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:l, *et seq.;*

    aa.    New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.;*

    bb.    New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.;*

    cc.    North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

    dd.    Ohio Rev. Code Ann. §§ 1345.02 and 1345.03; Ohio Admin. Code §§ 109:4-3-02, 109:4-3-03, and 109:4-3-10;

ee. Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

ff. Oregon Unfair Trade Practices Act, Ore. Rev. Stat § 646.608(e) &(g);

gg. Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

hh. South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

ii. South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.;*

jj. Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.;*

kk. Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

ll. Washington Consumer Fraud Act, Wash. Rev. Code § 19.86.010, *et seq.;*

mm. West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

nn. Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100.18, *et seq.*

("Consumer Protection Acts").

68. The acts, practices, misrepresentations, and omissions by Defendants, as described above, and Defendants' dissemination of deceptive and misleading advertising, marketing, and sales materials concerning The Fight constitutes unfair competition and unfair or deceptive acts or practices within the meaning of each of the above enumerated statutes, because each of these statutes generally prohibits deceptive conduct in consumer transactions.

69. Defendants violated each of these statutes by making certain false, misleading, and/or deceptive claims pertaining to The Fight and Pacquiao's physical condition in advance of The Fight.

70. The Defendants' unconscionable, unfair, and deceptive acts and practices set forth in this Complaint are likely and reasonably foreseeable to mislead Plaintiff and members of the Class acting reasonably in their reliance on Defendants' acts and practices, and to their detriment.

71. Plaintiff and the other Class Members were injured as a direct and proximate result of Defendants' unfair, deceptive and/or unconscionable acts and practices, because Plaintiff and the other Class members were induced to purchase a product they would not have otherwise purchased had they known the truth about Pacquiao's physical condition in advance of the fight.

72. As a result of Defendants' violations of the foregoing state consumer protection statutes, Plaintiff and the other Class members demand judgment against Defendant for compensatory damages, double damages, treble damages, statutory damages, punitive or exemplary damages, restitution, and such additional relief as the Court may deem appropriate or to which Plaintiff and the Class members may be entitled.

## COUNT IV-Unjust Enrichment
**(Asserted on Behalf of the Nationwide Class and New York Subclass)**

73. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1–72 above as if fully set forth herein.

74. Plaintiff and Class members conferred a tangible economic benefit upon Defendants by purchasing The Fight via pay-per-view. Plaintiff and Class members would have expected remuneration from Defendants at the time this benefit was conferred had they known that Pacquiao was physically compromised by a severe shoulder injury.

75. Indeed, Defendants knew that Pacquiao was physically compromised and fraudulently concealed said information from consumers, including Plaintiff and Class members. Defendants also engaged in deceptive or materially misleading acts or practices in their marketing, promotion, advertising, and sale of the Pacquiao-Mayweather fight via pay-per-view.

76. As a direct and proximate result of Defendants' misconduct as set forth above, Defendants have been unjustly enriched at the expense of Plaintiff and Class members.

77. It would be inequitable for Defendants to retain the profits, benefits and other compensation obtained by their wrongful and fraudulent conduct in the marketing, selling, promoting, and advertising The Fight via pay-per-view.

78. Plaintiff, on behalf of himself and Class members, seeks restitution from Defendants, and an Order of this Court disgorging all profits, benefits and other compensation obtained by Defendants from their wrongful and fraudulent conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all members of the Classes defined herein, prays for judgment as follows:

a. Certification of the Classes under Federal Rule of Civil Procedure 23 and appointment of Plaintiff as representative of the Classes and his counsel as Class counsel;

b. An order requiring imposition of a constructive trust and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Classes and to restore to the Plaintiff and members of the Classes all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent, deceptive, misleading, or unfair business act or practice, a violation of laws, statutes or regulations, or constituting unfair competition or false advertising;

c. Distribution of any moneys recovered on behalf of members of the Classes via fluid recovery or *cy pres* recovery where necessary and as applicable, to prevent Defendant from retaining the benefits of their wrongful conduct;

d. Compensatory and other damages for economic and non-economic damages identified herein, including all damages allowed by governing statutes;

e. Statutory pre-judgment and post-judgment interest on any amounts;

f. Reasonable attorneys' fees as may be allowable under applicable law;

g. Costs of this suit; and

h. Such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

Dated: May 6, 2015

Respectfully Submitted,

MORELLI ALTERS RATNER
777 Third Avenue
31st Floor
New York, New York 10017
Telephone: (212) 751-9800
Facsimile: (212) 751-0046

By: /s_____
David S. Ratner
dratner@morellialters.com
E.D.N.Y Bar ID: DR7758
Adam Deutsch
adeutsch@morellialters.com
E.D.N.Y. Bar ID: AD8836